# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : Criminal No. 06-213 |
| v. | : |
| RAMON RODRIGUEZ, | : **FILED** |
| Defendant. | : JUL 2 6 2006 |
| | NANCY MAYER WHITTINGTON, CLERK |
| | U.S. DISTRICT COURT |

Let this be filed.
Roger C. Foulette
U.S.D.J. 7/26/06

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, defendant, RAMON RODRIGUEZ, and the United States agree and stipulate as follows:

Between January 1, 2003 and July 1, 2005, defendant RAMON RODRIGUEZ ("RODRIGUEZ") was employed as an Education Program Specialist in the Office of Special Education and Rehabilitative Services for the United States Department of Education ("ED"). RODRIGUEZ's offices were located at 550 12th Street, in the District of Columbia. In his capacity as Program Specialist, RODRIGUEZ was responsible for monitoring numerous grants worth millions of dollars awarded by the United States Department of Education to educational institutions that provide services to the deaf and hearing-impaired community. RODRIGUEZ's responsibilities included approving changes to project plans and budgets, as well as evaluating whether grantees met project goals and expectations. Certain ED grantees were required to provide project updates to RODRIGUEZ and to obtain his approval for various aspects of their grant projects, including, in some cases, the expenditure of grant funds.

The Department of Education's Office of the Inspector General (ED OIG) began investigating RODRIGUEZ after receiving an anonymous hotline complaint in November 2004

alleging that RODRIGUEZ was attempting to influence a grantee to hire his girlfriend as an employee or as a consultant through Company A. The anonymous complainant also alleged that RODRIGUEZ was friends with COMPANY A's president.

Investigators subsequently learned that RODRIGUEZ had tried to influence "GRANTEE" (an entity associated with a university in California), to hire his girlfriend and to enter into a contract for grant-related services with COMPANY A. RODRIGUEZ was the Project Officer in charge of reviewing GRANTEE's expenditures and ensuring its compliance with ED's regulations.

In early 2004, a former project manager with GRANTEE contacted RODRIGUEZ to request that GRANTEE be able to "carry over" $700,000 in grant funds from fiscal year 2004 into fiscal year 2005. ("Carryover" requests were commonly received by ED from grantees that were not able to spend all of their grant funds in a particular year). On June 4, 2004, RODRIGUEZ notified GRANTEE's current project manager via e-mail that the carryover request was approved, but stipulated that a minimum of $150,000 had to be set aside for other services and accommodations.

Investigators retrieved an e-mail from RODRIGUEZ's work-issued computer dated November 14, 2004 from RODRIGUEZ to the project director for GRANTEE, in which he proposed that GRANTEE could hire RODRIGUEZ's girlfriend as a subcontractor with COMPANY A, and that this expenditure could be placed in the "consultant" category of the grant's budget. E-mails from RODRIGUEZ's work-issued computer also reveal that in November 2004, RODRIGUEZ corresponded with his girlfriend and Company A employees about how to draft the proposal for the contract with GRANTEE.

On December 14, 2004, RODRIGUEZ approved GRANTEE's earlier request to carry over $700,000 in grant funds as well as budget revisions to the grant. On December 16, 2004, a contract between COMPANY A and GRANTEE was presented to the Department of Education in Washington, D.C. The president of Company A signed the contract on December 27, 2004 and a representative of GRANTEE signed the contract the following week. RODRIGUEZ was copied on the contract.

The total proposed cost of the contract between GRANTEE and COMPANY A was $162,323. Moreover, the contract specified payments of $27,600 and $13,800 to the Research Director. Shortly after the contract was ratified, RODRIGUEZ's girlfriend was hired as the Research Director for the project. In January 2005, RODRIGUEZ's girlfriend began working for COMPANY A under the contract with Grantee, installing computers at schools in California and Oregon. The first installment payment on the contract was made to Company A on February 8, 2005 in the amount of $86,359.00.

A review of RODRIGUEZ'S bank records reveals that he endorsed and deposited into his personal account a check dated February 18, 2005, drawn on the account of COMPANY A, and made payable to RODRIGUEZ's girlfriend in the amount of $6,210. GRANTEE is referenced in the memo portion of the check. The check was also endorsed by RODRIGUEZ's girlfriend.

Based on this and other information, ED OIG and FBI agents executed a search warrant on RODRIGUEZ's residence in September 2005. RODRIGUEZ agreed to speak with agents at this time. RODRIGUEZ admitted that COMPANY A's president had hired his

girlfriend as the Research Director for a contract that COMPANY A had negotiated with GRANTEE in January 2005. RODRIGUEZ also told agents that he consulted with COMPANY A in a "broad sense," providing COMPANY A's president with ideas for strategic planning, brainstorming, and tips on how to approach universities to market COMPANY A's products.

RODRIGUEZ further stated that COMPANY A's president informed him that he would be able to pay RODRIGUEZ for services RODRIGUEZ had provided over the past couple of years if COMPANY A received the contract with GRANTEE. COMPANY A's president paid him $10,000 in cash in two separate installments ($4,500 and $5,500) between January and May of 2005 for services he provided to COMPANY A over the past 25 years. The installments corresponded to the installment payments COMPANY A received pursuant to its contract with GRANTEE. When paying RODRIGUEZ, COMPANY A's president told him, "you helped me all these years, here's a token of my appreciation."

RODRIGUEZ admitted to the agents that he tried to shield Company A's payment by requesting that he be paid in cash and not by check. COMPANY A's president wanted to pay RODRIGUEZ with a check but RODRIGUEZ feared it would constitute "taking money from the project." RODRIGUEZ stated that neither Department of Education officials (including his supervisors) nor GRANTEE's officials were aware of the cash payments by COMPANY A to RODRIGUEZ.

## DEFENDANT'S ACCEPTANCE

I have read every word of the five-page statement of offense. Pursuant to Fed. R. Cr. P. 11, after consulting with my attorney, I agree and stipulate to this statement of offense, and declare under penalty of perjury that it is true and correct.

Date: 06/15/06

_____
RAMON RODRIGUEZ
Defendant

I have read each of the five pages constituting this statement of offense and have reviewed and discussed them with my client. I concur with his decision to stipulate to this statement of offense.

Date: 6/15/06

_____
LARRY NATHANS
Attorney for Ramon Rodriguez, Defendant